# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| CORY A. BONSEL, *et al.*, | : | |
| Plaintiffs, | : | Case No. 3:16-cv-01988 |
| *vs.* | : | Judge James G. Carr |
| MARION-HARDIN CORRECTIONS COMMISSION, | : | |
| | : | |
| Defendant. | | |

## DEFENDANT MARION-HARDIN CORRECTION COMMISSION'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Marion-Hardin Corrections Commission ("MCC"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure Rule 12(c), respectfully moves this Court to dismiss the Complaint because it fails to state a claim upon which relief can be granted for four reasons:

1. Named Plaintiff Cory Bonsel's federal and state law claims are time-barred by the applicable statutes of limitations;

2. MCC is entitled to qualified immunity from all Plaintiffs' claims;

3. MCC is entitled to statutory immunity from all the state law claims pursuant to Ohio Revised Code Chapter 2744; and

4. Bonsel does not have standing to represent any putative class alleged or identified in in this litigation.

A memorandum in support is attached hereto.

        Respectfully submitted,

        /s/ J. Stephen Teetor
        J. Stephen Teetor    (0023355)
        Shawn K. Judge    (0069493)
        Matthew S. Teetor    (0087009)
        Isaac Wiles Burkholder & Teetor, LLC
        Two Miranova Place, Suite 700
        Columbus, Ohio 43215-5098
        (614) 221-2121
        Fax (614) 365-9516
        e-mail: steetor@isaacwiles.com
                sjudge@isaacwiles.com
                mteetor@isaacwiles.com
        *Attorneys for Defendant*
        *Marion-Hardin Corrections Commission*

## **MEMORANDUM IN SUPPORT**

**I.    STANDARD**

It is well-settled that the standard of review for a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6). *Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 717 (S.D. Ohio 2013) (citing *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007)). To avoid dismissal for failure to state a claim, a complaint must contain sufficient factual matter that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), the United States Supreme Court clarified the plausibility standard articulated in *Twombly:*

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal

>conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556.

*Id.* at 678-79, 127 S. Ct. at 1949–50. The Court then gave direction on how to determine plausibility:

>Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id.* at 679, 127 S. Ct. at 1950 (internal citations omitted). As set forth below, application of this standard to the Complaint warrants dismissal for failure to state plausible claims upon which the Court can grant relief.

## II. BACKGROUND

With the exception of Plaintiff Cory Bonsel (whose specific allegations are addressed below), Plaintiffs are yet-to-be-identified individuals representing yet-to-be-defined classes of individuals who have been incarcerated at the Multi-County Corrections Center located in Marion, Ohio and operated by the Marion-Hardin Corrections Commission ("MCC"). According to the Complaint, MCC instituted a "Pay-For-Stay" program under which individuals incarcerated at the Multi-County Corrections Center were assessed a processing fee and per diem housing fee. Pl.s' Compl., ECF No. 1, ¶ 21. The Complaint also alleges that funds found on any individual at the time of booking into the Multi-County Corrections Center were taken from the individual and applied to said fees. *Id.* ¶ 22.

The named plaintiff, Cory Bonsel, alleges that he was arrested on June 14, 2013. *Id.* ¶ 25. Bonsel asserts that he was assessed a booking fee and a per diem fee for each day of confinement at that time. Bonsel was arrested by warrant on indictment for theft and for

3

violation of a protection order.  *See* Exhibit 1, Cory Bonsel booking information, at 3.[1]  At the time of booking, Bonsel had $5.00 in cash on his person.  *Id. a*t 4 and 5.  Bonsel was made aware of the Pay-For-Stay program in place at the Multi-County Corrections Center and signed an acknowledgement of the same.  *Id.* at 6.  Bonsel pleaded no contest and was found guilty on June 19, 2014.  Exhibit 2, Cory Bonsel Criminal Case Docket.

The crux of the Complaint is that MCC charged Bonsel and others certain fees prematurely.  This theory of the case relies upon a non-binding opinion issued by the Ohio Attorney General in 2005.  Pl.s' Compl., ECF No. 1, ¶ 23.  That opinion provides in relevant part that "nothing in the statutory language indicated that a county may look back in time to include expenses incurred prior to the offender's conviction, sentencing, and confinement under a term of imprisonment."  *Id.*; *see also* 2005 Ohio Atty.Gen.Ops. No 2005-019.  The Complaint therefore asserts claims under 42 U.S.C. § 1983 for violation of the Fifth and Fourteenth Amendments and under state law for violations of rights under Ohio Revised Code §§ 307.93 and 2929.37, as well as claims for declaratory, injunctive, and equitable and monetary relief.  Pls.' Compl., ECF No. 1 ¶¶ 42-70.

---

[1] The Court may consider the selected portion of the booking information of Plaintiff Cory Bonsel and the docket concerning his criminal charges that are attached to this motion without treating the instant motion as a motion for summary judgment.  As a general rule, "matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss."  *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).  However, a certain amount of flexibility attends the determination of whether a matter falls "outside the pleading[s]."  *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).  In addition, courts have "taken a liberal view of what falls within the pleadings for purposes of Rule 12(b)(6)."  *Id.*  Therefore, documents attached to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim."  *Weiner*, 108 F.3d at 89; *McGee v. Simon & Schuster Inc.*, 154 F. Supp. 2d 1308, 1311 n.3 (S.D. Ohio 2001).  If extrinsic materials merely "fill in the contours and details of the plaintiff's complaint, and add nothing new," a court may consider them without converting the motion to one for summary judgment.  *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997); *see also Delahunt v. Cytodyne Tech.*, 241 F. Supp. 2d 827, 831-32 (S.D. Ohio 2003).

### III. LAW AND ARGUMENT

#### A. BONSEL'S FEDERAL AND STATE LAW CLAIMS ARE TIME-BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

##### 1. Federal Claims.

The Sixth Circuit has held that Ohio's two year personal injury statute of limitations applies to § 1983 claims. *Fowler v. City of Canton, Ohio*, No. 5:08CV2350, 2009 WL 2950818, at *3 (N.D. Ohio Sept. 10, 2009) (citing *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989)); *see also Banks v. Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003).  The court of appeals has also held that "under federal law, as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his injury has occurred." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996)); *Ruff v. Runyon*, 258 F.3d 498, 500-01 (6th Cir. 2001); *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).  In determining when a cause of action accrues, a court must "look to the event that should have alerted the typical lay person to protect his or her rights." *Cooey*, 479 F.3d at 416 (citing *Trzebuckowksi v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003)).

Here, Named Plaintiff Cory Bonsel ("Bonsel") asserts, among other things, federal claims under § 1983 for alleged violations of his Fifth and Fourteen Amendment rights.  Pl.s' Compl., ECF No. 1 ¶¶ 43-50.  As a basis for these claims, Bonsel alleges that he was arrested on June 14, 2013, and that he was assessed a booking fee and a per diem fee for each day of his confinement beginning on that same day.  *Id.* ¶ 25.  Although Bonsel does not plead when the fees were assessed or when the assessment of fees terminated, his booking information indicates that he was released on bond from MCCC on June 17, 2013.  Exhibit A, at 8.

Bonsel alleges that the assessment and collection of both booking fee and per diem fees is improper and illegal. *Id.* ¶ 26. As the basis for this assertion, Bonsel cites a nonbinding opinion issued by the Ohio Attorney General concerning the administration and assessment of fees under Ohio Revised Code § 307.93. *Id.* ¶ 23. Bonsel also alleges that fees assessed under the Pay-For-Stay program are "taken directly from any funds found on the person at the time of booking." *Id.* ¶ 21. Thus, Bonsel alleges that he was assessed – and presumably paid – fees under the Pay-For-Stay program immediately upon booking. According to booking records, Bonsel had $5.00 in cash on his person at the time of booking. Exhibit A, at 4-5. Based upon the allegations of Bonsel's Complaint, the absolute latest date upon which Bonsel could timely assert his claims was June 17, 2015, two years after the date that he was released on bond. Exhibit A at 8. However, Bonsel filed the instant case on August 9, 2016, more than a year after the statute of limitations had run on any potential claim.

Further, Bonsel cannot claim that he recently discovered that he may have a claim for relief upon which to sue the correctional facility where he was previously incarcerated. Bonsel relies on a 2005 opinion from the Attorney General's Office as the basis for his claims that Defendant improperly assessed fees pursuant to Ohio Revised Code § 307.93. Thus, Bonsel knew or reasonably should have known of his claimed injuries the moment the first fee under the Pay-For-Stay program was assessed. Bonsel acknowledged the Pay-For-Stay program on June 14, 2014. Exhibit The clock on the statute of limitations began to run either when Bonsel was booked on June 14, 2013, or when he was released on bond on June 17, 2013. Bonsel cannot offer any reasonable explanation why he sat on his rights or why he failed to seek relief for his claimed injuries for more than three years.

6

Even assuming that the Complaint's factual allegations are true, the initial act that Bonsel alleges caused him injury occurred on June 14, 2013. He therefore had until June 14, 2015 to bring his claims. Because Bonsel failed to do so, the Court should dismiss his § 1983 claims as untimely.

### 2. **State Law Claims.**

Bonsel alleges that MCC is a political subdivision formed under the laws of Ohio, specifically Ohio Revised Code § 307.93. Pl.s' Compl., ECF No. 1 ¶ 17. Bonsel's state law claims are therefore also time-barred based upon the applicable statute of limitations.

Under Ohio law, state law claims against political subdivisions must be brought within two years. Ohio Revised Code § 2744.04 provides in relevant part:

> An action against a political subdivision to recover damages for injury . . . allegedly caused by any act or omission in connection with a governmental or proprietary function, whether brought as an original action, cross-claim, counterclaim, third-party claim, or claim for subrogation, shall be brought *within two years* after the cause of action accrues, or within any applicable shorter period of time for bringing the action provided by the Revised Code.

Ohio Rev. Code § 2744.04(A) (emphasis added).

Here, the Complaint asserts that Bonsel was injured as a result of violations pursuant to Ohio Revised Code §§ 307.93 and 2929.37. Bonsel claims that he was booked and that fees were assessed against him under the Pay-For-Stay program on June 14, 2013. Accordingly, Bonsel was required to bring his state law claims by June 14, 2015. He has failed to do so. Moreover, he again cannot claim that his discovery of this action was delayed or impeded; his reliance on the 2005 Ohio Attorney General Opinion undercuts any such argument. The Court should therefore dismiss Bonsel's state law claims as untimely.

7

### B. MCC IS ENTITLED TO QUALIFIED IMMUNITY ON THE FEDERAL CLAIMS.

Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-prong test for evaluating the claim of qualified immunity. Under one prong of the test, a court asks whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Under the other prong of the test, "if a violation could be made out on a favorable view of the parties' submissions," a court asks "whether the right was clearly established." [2] *Id.* A court may address either prong of the test first, and if a plaintiff cannot satisfy both prongs, qualified immunity applies. *Brown v. Lewis*, 779 F.3d 401, 411-12 (6th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009)).

Here, the putative class members cannot demonstrate a violation of a constitutional right, much less a clearly established right. The Complaint alleges that they were assessed "illegal" or "improper" fees pursuant to MCC's Pay-For-Stay program. Pls.' Compl., ECF. No. 1 ¶¶ 2 and 26. However, this Court has already determined that a nominal $100 booking fee does not amount to a constitutional violation and does not violate an inmate's due process rights. *See*

---

[2] Some Sixth Circuit panels have occasionally added a third prong to the *Saucier* test. *See, e.g., Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) ("Third, we determine whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights' "(quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*))). The Sixth Circuit has also indicated, however, that the second and third prongs are closely related and that there is some flexibility regarding their analysis and application. *See, e.g., Causey v. City of Bay City*, 442 F.3d 524, 528 n.2 (6th Cir. 2006) (explaining that a " 'clearly established' [right] sufficiently implies that its violation is objectively unreasonable").

8

*Berry v. Lucas Cty. Bd. of Comm'rs*, No. 3:08CV3005, 2010 WL 480981, at *9 (N.D. Ohio 2010) (Carr, C.J.). Accordingly, MCC is entitled to qualified immunity from the putative class' claims because the Complaint fails to allege a violation of a clearly established constitutional right.

      **C.**    **MCC IS ENTITLED TO STATUTORY IMMUNITY ON THE STATE LAW CLAIMS PURSUANT TO OHIO REVISED CODE CHAPTER 2744.**

MCC is entitled to immunity from the state law claims. Political subdivisions are generally immune from such tort liability pursuant to Ohio Revised Code § 2744.03(A), which provides that a political subdivision cannot be civilly liable for "injury, death or loss to person or property allegedly caused by an act or omission in connection with a governmental or proprietary function . . . ." For purposes of immunity bestowed under Chapter 2744, a "governmental function" includes "the . . . operation of jails," among other things. Ohio Rev. Code § 2744.01(C)(2)(h).

The Ohio Revised Code then enumerates specific instances in which immunity granted under § 2744.03(A) may be asserted to establish nonliability of a political subdivision in a civil action. *See* Ohio Rev. Code § 2744.03(A)(1)-(5). MCC fits within three of these specific grants of immunity.

First, MCC is immune because it was acting under authorization of law. Ohio Revised Code § 2744.03(A)(2) provides that a political subdivision is immune from civil liability if the conduct that gave rise to the claim of liability was required by or authorized by law. The alleged conduct that gave rise to the state law claims asserted here was the operation of a Pay-For-Stay program Pl.s' Compl., ECF No. 1 ¶¶ 21-26. Ohio Revised Code § 307.93 authorizes such a Pay-For-Stay program. Additionally, this Court has found that a $100 booking fee held in trust for an inmate is permissible and does not amount to a due process violation. *Berry*, 2010 WL

9

480981, at *9 (Carr, C.J.). The Pay-For-Stay program operated at the Multi-County Corrections Center was authorized by law. Compare Exhibit A, at 6 with Ohio Rev. Code § 307.93 and *Berry*, 2010 WL 480981 (discussing the operation and authorization of Pay-For-Stay programs under Ohio law). Thus, MCC is entitled to immunity from Plaintiffs' state law claims pursuant to Ohio Revised Code § 2744.03(A)(2).

Second, MCC is immune because it was engaged in a discretionary act. Ohio Revised Code § 2744.03(A)(3) provides that a political subdivision is immune from civil liability if the action or failure to act that gave rise to the claim of liability was within the discretion of an employee with respect to policy-making, planning, or enforcement powers by virtue of the office or the position of the employee. As stated above, § 307.93 authorizes a multi-county corrections center to adopt a pay-for-stay program in its own discretion if the program provides certain procedural requirements. MCC is immune from the state law claims pursuant to § 2744.03(A)(3) because the decision to institute a Pay-For-Stay program is within the sound discretion of MCC's to policy-making and enforcement powers.

Third, MCC is immune because its discretionary actions were not done with malice, in bad faith, or in a reckless manner. Ohio Revised Code § 2744.03(A)(5) provides that a political subdivision is immune from civil liability if the claim of liability arises from a discretionary decision on whether to acquire or how to use equipment, supplies, materials, personnel, facilities, and other resources unless the judgment was with malicious purpose, in bad faith, or in a wanton or reckless manner. Here, however, Plaintiffs have failed to even allege facts that plausibly suggest the existence of malice, bad faith, or recklessness.

Under Ohio law, ""[t]he term 'malice' means the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *MacCabee v. Mollica*, No. 09CA32, 2010 WL 3532089, at *5, 2010-Ohio-4310, ¶ 21.  Ohio law also explains that " '[b]ad faith' implies sinister motive that has no reasonable justification" and that it embraces more than bad judgment or negligence." *Id.*, 2010-Ohio-4310, ¶ 21 (internal quotation marks and citations omitted).  Rather, bad faith "imports a 'dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.*, 2010-Ohio-4310, ¶ 21 (internal quotation marks and citation omitted).  Finally, the Supreme Court of Ohio has emphasized that both wanton and reckless behavior are characterized by the actor's perverse disregard for a known risk.  *See Rankin v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 118 Ohio St.3d 392, 398, 2008-Ohio-2567, ¶ 37.

Even if all of the Complaint's factual allegations are assumed to be true, they at best rise to the level of negligence by MCC, not malice, bad faith, or recklessness.  The Complaint implies alleged omissions with respect to the operation of the Pay-For-Stay program that was previously in place at the Multi-County Corrections Center.  Thus, the pleading fails to present malicious or reckless conduct on the part of MCC and fails to present any actions that could be construed as taken in bad faith.  Accordingly, MCC is entitled to immunity pursuant to Ohio Revised Code § 2744.03(A)(5).

MCC is entitled to immunity from the state law claims because it was involved in a governmental function and because the conduct involved here fits within the express grants of immunity set forth in § 2744.03(A)(2), (A)(3), and (A)(5).  The Court should therefore dismiss the state law claims.

**D.     DISMISSAL OF THE PUTATIVE CLASS' CLAIMS IS MANDATED BECAUSE BONSEL DOES NOT HAVE STANDING TO REPRESENT ANY CLASS ALLEGED OR IDENTIFIED IN THE COMPLAINT.**

As demonstrated above, Bonsel's claims are untimely. Based upon the applicable statutes of limitations, the Court should dismiss his claims. That dismissal necessitates dismissal of the putative class' claims as well, regardless of the merits of those claims.

A prerequisite to class action litigation is that a member of a class may sue as a representative of a class only if the claims of the representative are typical of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). Here, Bonsel does not have standing to sue on behalf of alleged class members because his claims fall outside the applicable statutes of limitations; he has no viable case. The Supreme Court has held that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S. Ct. 669, 675 (1974). Thus, " '[w]here . . . the named plaintiff's claim becomes moot before certification [of the class],' the ordinary rule is that 'dismissal of the action is required.' " *Wilson v. Gordon*, 822 F.3d 934, 942 (6th Cir. 2016) (quoting Brunet v. City of Columbus, 1 F.3d 390, 399 (6th Cir. 1993)). Consequently, the Sixth Circuit has held that where a named plaintiff's individual claim has been dismissed from an action prior to class certification, the named plaintiff is not an appropriate class representative within the meaning of Rule 23(a) and the complaint must be dismissed as to the purported class. *Shipp v. Memphis Area Office, Tenn. Dep't of Employment Security*, 581 F.2d 1167, 1172-73 (6th Cir. 1978). Because Bonsel is the only named plaintiff, because there has been no certification attempt or decision, and because Bonsel cannot represent the putative class, the Court should dismiss the remainder of the Complaint.

IV. **CONCLUSION**

For the reasons set forth above, dismissal is warranted because the Complaint fails to allege a constitutional violation. Additionally, MCC is entitled to qualified immunity from Bonsel's federal claims and to statutory immunity from his state law claims. All of Bonsel's claims are also time-barred by the applicable statutes of limitations. As such, Bonsel has no standing to represent any potential class members in this litigation. Because he is the only named plaintiff and because he does not have standing to pursue his untimely claims or to represent the putative class, the Court should dismiss this entire litigation.

                Respectfully submitted,

/s/   J. Stephen Teetor
J. Stephen Teetor              (0023355)
Shawn K. Judge                 (0069493)
Matthew S. Teetor              (0087009)
Isaac Wiles Burkholder & Teetor, LLC
Two Miranova Place, Suite 700
Columbus, Ohio  43215-5098
(614) 221-2121
Fax (614) 365-9516
e-mail:  steetor@isaacwiles.com
         sjudge@isaacwiles.com
         mteetor@isaacwiles.com
*Attorneys for Defendant*
*Marion-Hardin Corrections Commission*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of October 2016, I electronically filed the foregoing with the Clerk of Courts using the Court's authorized electronic filing system.

/s/   J. Stephen Teetor
J. Stephen Teetor              (0023355)

3592538.2 : 10438 00001