IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Cory Bonsel, et al.,                                              Case No. 3:16CV1988

          Plaintiffs

       v.                                                            **ORDER**

Marion-Hardin Corrections Commission,

          Defendant

      This civil-rights case under 42 U.S.C. § 1983 challenges the Marion-Hardin Corrections Commission's (the Commission) "Pay-For-Stay" policy at a multi-county detention center.

      The Commission, on behalf of the Commissioners of Marion County and Hardin County, Ohio, operates the Multi-County Corrections Center (the Corrections Center), a detention facility in Marion, Ohio. In 2013, the Center adopted a "Pay-For-Stay" protocol, whereby it charged each inmate a $150 processing fee at the time of booking and a $100 per-diem fee for each day of the inmate's incarceration.

      The Commission assessed the fees on all inmates who entered the facility, regardless of whether those inmates' cases concluded with a conviction, an acquittal, or a dismissal of the charges.

      A former detainee, plaintiff Cory Bonsel, alleges that the Commission's "policy regarding the pre-conviction booking and per diem fees is illegal" because it violates his federal right to procedural due process and certain provisions of Ohio law. (Doc. 1 at ¶2).

He brings this putative class action seeking disgorgement of the fees that the Commission unlawfully obtained, a declaratory judgment "establishing that fees . . . may be assessed only for post-conviction processing and confinement costs," and an injunction "prevent[ing] any further violations of the rights afforded to individuals with respect to the assessment of pre-conviction booking fees and per diem charges." (*Id.* at ¶¶58, 66).

Pending is the Commission's motion for judgment on the pleadings. (Doc. 7). Because Bonsel's claims are untimely, I grant the motion.

**Background**

On June 14, 2013, authorities arrested Bonsel on a theft charge and took him to the Corrections Center. (Doc. 8–1 at 3). There Bonsel "was charged a $150.00 booking fee and a $100.00 per diem fee for each day of pretrial confinement." (Doc. 1 at ¶25). He remained at the Corrections Center until June 17, 2013, when he made bond. (Doc. 8–1 at 8).

At the time of booking, Bonsel signed a "Pay-for-Stay Escrow Trust Account Deposit" form. (*Id.* at 6). This document explained that the Commission:

> has adopted a program whereby any booking prisoner who is not indigent and who is convicted of an offense and who is confined at [the Corrections Center] under a sanction or term of imprisonment imposed under any provision of the Ohio Revised Code shall pay for the costs of processing the prisoner into the facility [and] the costs of his/her confinement[.]
>
> The one time "Pay-for-Stay" deposit is currently $100.00 and an additional $50.00 is assessed for each day of confinement. Upon conviction, you will be responsible for the daily rate for each day of confinement, as well as medical, dental and other expenses assessed by the [Corrections Center] during your incarceration and for previous incarcerations for which you were convicted.
>
> This Pay-for-Stay deposit shall be deposited into a "trust account" for your benefit and may be applied to your Pay-For-Stay obligations if you are convicted. If you are

2

> not convicted within 180 days of booking, the entire "Pay-for-Stay" deposit shall be returned to you out of the trust account.
>
> Upon release you will be mailed a summary statement detailing your deposits and charges. In order to request a refund of your Pay-for-Stay deposit prior to the expiration of the 180 day period, it is your responsibility to provide legal verification that all charges have been dismissed or that you have been found innocent of all charges.

(*Id.*) (emphasis in original).

Bonsel entered a no-contest plea to the theft charge on June 19, 2013. (Doc. 8–2 at 1).

The same day, the Marion County Municipal Court adjudicated him guilty and sentenced him to a one-hundred-and-eighty-day jail term. (*Id.*). The docket sheet from Bonsel's criminal case indicates that Bonsel was "sent to prison" on January 10, 2014. (*Id.*).

Records from the Corrections Centers show that Bonsel incurred $295.00 in fees and charges between June 14 and June 17. (Doc. 11–1 at 1). After his conviction, and presumably due to serving the theft sentence at the Corrections Center, Bonsel incurred roughly $10,000 in additional fees and charges. (*Id.* at 2).

In 2016, "[a]fter meeting with the ACLU," the Commission "discontinued the Pay-for-Stay program for both societal benefit as well as financial reasons." (Doc. 4 at ¶9).

Bonsel filed this action on August 9, 2016, alleging that the Commission's practice of collecting "pre-conviction booking and per diem fees" violates federal and state law. (Doc. 1 at ¶¶21, 29, 44, 53, 59, 63).

**Standard of Review**

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be

granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).[1]

## Discussion

The Commission argues that it is entitled to judgment as a matter of law because: 1) Bonsel's claims are untimely; 2) it is entitled to qualified immunity on the procedural-due-process claim; 3) Ohio law affords it immunity on Bonsel's state-law claim; and 4) because Bonsel's claims are either time-barred or blocked by immunity rules, Bonsel lacks standing to represent the class.

Because the statute-of-limitations issue is dispositive, I address only that issue.

### A. Timeliness of the Federal Claim

"The limitations period for an action under 42 U.S.C. § 1983 is determined by the limitations period for personal injury actions in the state in which the Section 1983 claim arises." *Estate of Cottingham v. Hamilton Cnty. Dep't of Job & Family Servs.*, 2017 WL 398415, *3 (S.D. Ohio). In Ohio, that period is two years. *See* O.R.C. § 2305.10.

The statute of limitations begins to run "when the plaintiff knows or has reason to know that the act providing the basis of his injury has occurred." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007).

The Commission argues that the limitations period for Bonsel's due-process claim began running no later than June 17, 2013, when Bonsel bonded out of the Corrections Center. (Doc. 7 at 5). It points to Bonsel's allegation that the Corrections Center assessed the booking and per-diem

---

[1] Both parties have relied on materials outside the complaint to make their cases why judgment for the Commission is or is not appropriate, and neither side challenges the other's use of those materials. Consistent with Circuit law, I can consider these materials, which serve principally to provide relevant background information, without converting the 12(c) motion into one for summary judgment. *E.g.*, *Rondigo LLC v. Town of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011).

fees immediately upon his arrival at the Center on June 14. The Commission also observes that Bonsel acknowledged the Pay-for-Stay policy on June 14, when he signed the "Pay-For-Stay Escrow Trust Account Deposit" form.

Accordingly, the Commission argues that Bonsel knew, no later than June 17, 2013, that the Corrections Center had assessed the illegal fees related to his pre-conviction detention. And because Bonsel did not file suit on or before June 17, 2015 – rather, he filed almost fourteen months later, in August, 2016 – the Commission contends that the suit is untimely.

Bonsel makes three arguments in opposition. (Doc. 11 at 4–7).

First, he contends that the federal claim is timely because the Commission assessed him an illegal "Pay-for-Stay" fee on December 23, 2015, and he filed suit within two years after the assessment of that fee. (*Id.* at 4).

Second, Bonsel argues that it was not until 2015, on his "ultimate release" (Doc. 11 at 4),[2] that he discovered that the Commission's "unconstitutional billing practices . . . were having a negative, detrimental effect on his credit[.]" (*Id.*). Accordingly, Bonsel maintains he had no reason to know of his injury, and thus no reason to bring suit, until 2015.

Third, Bonsel relies on the continuing-violation doctrine to argue that the limitations period has not yet run. According to Bonsel, the Commission has undertaken "continuing" collection efforts to recover the booking and per-diem fees, and these efforts cause him "daily and repeated harm." (*Id.*). Because the Commission's "malfeasance [in attempting to collect Bonsel's debt] has not yet drawn to a close" (*id.* at 6), Bonsel maintains that his claim is timely.

---

[2] Bonsel does not explain what he means by his "ultimate release." The record shows only that Bonsel received a one-hundred-and-eighty-day sentence for the theft conviction, and that he began serving that sentence in January, 2014.

5

I disagree with these contentions and hold that the limitations period for Bonsel's due-process claim expired no later than June 19, 2015.

The pleadings establish that Bonsel learned of the Pay-for-Stay policy – and, consequently, the fees the Commission would assess in accordance with that policy – on June 14, 2013. (Doc. 8–1 at 6). Moreover, the Marion County Municipal Court convicted Bonsel on June 19, 2013, meaning that the last day on which the Commission could conceivably assess an unlawful pre-conviction fee was June 19.

Accordingly, Bonsel knew or had reason to know of the act forming the basis of his injury – the unlawful imposition of fees associated with his pre-conviction detention – no later than June 19, 2013. He therefore had to file suit on or before June 19, 2015, but he did not do so.

That Bonsel was convicted in June, 2013, also explains why his reliance on a fee that the Commission assessed in December, 2015 does not make his claim timely.

After June 19, 2013, Bonsel was no longer a pre-conviction detainee.

On the contrary, a court of law had convicted him and sentenced him to a legally authorized term of imprisonment. Thus, the fee assessed in December, 2015 related only to his post-conviction detention; that fee, whatever its origin,[3] was not one of the "pre-conviction booking and per diem fees" (Doc. 1 at ¶2) that Bonsel challenges in this case.

Likewise, Bonsel's argument that he did not discover until 2015 the adverse effects that his accumulated fees had on his credit is unavailing.

---

[3] It is unclear, given Bonsel's 2013 conviction and the fact that he began serving his six-month sentence for that conviction in January, 2014, what the basis of this fee is. Bonsel has not alleged, for example, that authorities arrested him for a separate crime after he finished serving his theft offense, and that he was in pre-conviction detention *vis-a-vis* that charge in December, 2015.

6

"[L]imitations periods begin to run in response to discriminatory acts themselves, not in response to the continuing effects of past acts." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003). Knowing when Bonsel discovered the adverse effect of the Commission's conduct on his credit thus does not answer the key question for statute-of-limitations purposes: when did Bonsel know or when should he have known that the Commission had assessed the complained-of fees? As already discussed, Bonsel knew about the fees no later than June 19, 2013.

Finally, the fact that these billing practices were "continuing" in nature does not warrant application of the continuing-violation doctrine. The conduct about which Bonsel complains is the assessment of the pre-conviction fees and charges, and he was on notice of that conduct in June, 2013. That conduct abated, moreover, with Bonsel's conviction on June 19, 2013.

For these reasons, Bonsel's federal due-process claim is time-barred.

### B. Timeliness of the State Claim

Bonsel's second claim, which alleges the Commission's fee-collection practices are inconsistent with Ohio law, is likewise untimely.

Ohio law provides a two-year limitations period for claims against "a political subdivision to recover damages for injury allegedly caused by any act or omission in connection with a governmental or proprietary function." O.R.C. § 2744.04(A).

Here, Bonsel alleges that the Commission is a political subdivision (Doc. 1 at ¶17), and his state-law claim is that the Commission had no basis under Ohio law to assess fees against him. Because Bonsel knew or should have known about those fees no later than June 19, 2013, and because he did not file this suit until August 9, 2016, this claim is untimely.[4]

---

[4] Bonsel's opposition does not address the timeliness of his state-law claim. (Doc. 11 at 4–7).

7

**Conclusion**

It is, therefore

ORDERED THAT the defendant's motion for judgment on the pleadings (Doc. 7) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge